IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| KRISTINE DUPONT, | CASE NO. 1:16 cv 2363 |
| Plaintiff, | JUDGE NUGENT |
| vs. | |
| ACTIVE PLUMBING SUPPLY CO. | **DEFENDANT ACTIVE PLUMBING SUPPLY CO.'S MOTION FOR SUMMARY JUDGMENT** |
| Defendants. | |

Now comes Defendant Active Plumbing hereinafter ("Defendant") by and through its undersigned counsel, and respectfully moves this Court pursuant to Rule 56 of the Federal Rules of Civil Procedure, to enter Summary Judgment in its favor and against Plaintiff, Kristine DuPont ("Plaintiff") on the grounds that there are no genuine issues of material fact and Defendant is entitled to judgment as a matter of law. The basis for this motion is set out more fully in the Memorandum in Support and evidentiary materials attached hereto and incorporated herein.

Respectfully submitted,

/s/ Jo A. Tatarko
Jo A. Tatarko, Esq. (#0082062)
Richard N. Selby, II. Esq. (#0059996)
DWORKEN & BERNSTEIN CO., L.P.A.
60 South Park Place
Painesville, Ohio 44077
(440) 352-3391  (440) 352-3469
jtatarko@dworkenlaw.com
rselby@dworkenlaw.com
*Attorneys for Defendant Active Plumbing Co.*

# MEMORANDUM IN SUPPORT OF DEFENDANT
# ACTIVE PLUMBING CO.'S MOTION FOR SUMMARY JUDGMENT

## I. FACTS

Defendant is a wholesaler of plumbing supplies and associated products that it sells to builders, contractors and the end users.[1] Plaintiff was hired by Defendant as a Kitchen and Bath Designer on or about May 22, 2014.[2] Plaintiff's job was to sell Defendant's products in the showroom.[3] Part of Plaintiff's job involved out of office appointments with prospective customers for purposes of measuring.[4] Some of these appointments would occur after hours, which would result in Plaintiff working more than 40 hours per week.[5]

Defendant paid Plaintiff a salary that covered the 40 hours she was regularly scheduled to work each week, but she was eligible for payment of overtime as long as she reported the hours.[6] Defendant provided a form to Plaintiff to report her overtime hours to Defendant.[7] Plaintiff used the form provided by Defendant to submit her overtime hours.[8] On the occasions that she reported her overtime hours, she was paid for those hours at her overtime rate.[9] Furthermore, Plaintiff admitted that for the periods she submitted overtime hours on the form, those reports reflected the

---

[1] Bryce Barber Aff: ¶3. A copy of the Affidavit of Bryce Barber is attached hereto as Exhibit "A" and made a part hereof.
[2] Dupont Depo.: Vol I, p. 19, Def. Ex. 1. The transcripts of Volume I and Volume II of the deposition of Kristine Dupont are attached hereto as Exhibit "B" and made a part hereof. Copies of Defendant's Exhibits marked by Defendant for use during the depositions are attached hereto as Exhibit "E" and make a part hereof.
[3] Dupont Depo.: Vol. I, p. 65, line 3-18.
[4] Dupont Depo.: Vol I, p. 70, line 24 to p. 71, line 12.
[5] Dupont Depo: Vol. I, p. 70, lines 13-23. Although Plaintiff testified she had appointments outside of her regular work hours three to four times per week, Kelsey Sizemore, another employee of Defendant who works in the same position Plaintiff did, testified that she was able to do her job with substantially fewer overtime hours. Kelsey Sizemore depo: pp.45-46. A copy of the transcript of the deposition of Kelsey Sizemore is attached hereto as Exhibit "C" and made a part hereof. The number of times Sizemore testified she was required to work overtime is consistent with the number of occasions Plaintiff actually turned in overtime requests during her employment with Defendant.
[6] Cindy Barber Depo.: p. 45. A copy of the transcript of the deposition of Cindy Barber is attached hereto as Exhibit "D" and made a part hereof.
[7] Dupont Depo. Vol. I at p. 26, line 15-19.; PL. Ex. 2. Copies of Plaintiff's Exhibits marked by Plaintiff for use during depositions are attached hereto as Exhibit "F" and made a part hereof.
[8] DuPont Depo. Vol. I at p. 76, line 21-p. 77, line 3.
[9] Id.

total number of hours that she worked during those pay periods and there would have been no additional unreported hours during that pay period.[10] Plaintiff turned in timesheets requesting overtime, all of which was paid to her, on August 7, 2014, September 9, 2014, December 11, 2014, January 22, 2015, April 2, 2015, April 16, 2015, May 28, 2015 and December 10, 2015.[11]

Cindy Barber, Defendant's CEO, periodically sent emails to employees, including Plaintiff, reminding them to submit their overtime for payroll processing. For example, on May 22, 2015, Cindy Barber, sent an email to all of the kitchen and bath designers, including Plaintiff, indicating that because of the holiday all overtime should be turned in by 1:00 PM that day.[12] Plaintiff responded by sending in her timesheet requesting overtime.[13]

Later, Ms. Barber sent an email on June 8, 2015 asking for all overtime reports "before Monday morning."[14] Later, on August 31, 2015, Cindy Barber sent all of the showroom people, which would have included Plaintiff, an email stating that their overtime requests should now be sent to her son, Bryce Barber.[15] Bryce Barber sent an email reiterating the overtime process on March 4, 2016.[16] Plaintiff was also presented with annual Compensation Plans in both 2015 and 2016.[17] Both of the Compensation Plans provided that Plaintiff's normal work schedule was 40 hours per week, but that "when working for hours associated with an after-hours appointment, the employee will be paid time and one half."[18]

Despite the fact that Plaintiff was told via email that she was entitled to overtime compensation, the fact that her Compensation Plans expressly provided for overtime compensation

---

[10] Dupont Depo.: Vol. I, p. 77, line 24-p. 78, line 4.
[11] Dupont Depo.: Vol. I, pp.76-77, pp.88-92, Def. Ex. 3.
[12] Dupont Depo.: Vol. I, pp. 92-93, Def. Ex. 4.
[13] Id.
[14] Dupont Depo.: Vol. I, pp.108-109, Def. Ex. 7.
[15] Dupont Depo: Vol. I, p.113, Def. Ex. 8.
[16] Dupont Depo.: Vol. I, pp. 115-116, Def. Ex. 9.
[17] Dupont Depo: Vol. II, pp. 150-151, Pl. Ex. 13 and 14.
[18] Pl. Ex. 13 and 14.

and the fact that she turned in overtime requests (all of which were honored) on eight occasions over a 16 month period during the course of her employment, she is now claiming in this lawsuit that she was somehow prevented from turning in overtime requests during the course of her employment with Defendant. Although Plaintiff does not have any record of the actual number of hours she is now claiming she worked, she has attempted to re-create these hours from her calendar and mileage requests.[19]

Plaintiff is now claiming she failed to turn in overtime hours despite receiving the various emails and Compensation Plans because she was discouraged from turning in overtime by Cindy Barber and Bryce Barber, who at some point became Plaintiff's supervisor.[20] Plaintiff alleges she was discouraged from turning in overtime requests after a conversation with Cindy and Bryce Barber which allegedly occurred after she was given her Compensation Plan in mid-February, 2015.[21] Nonetheless, Defendant's records show that Plaintiff submitted overtime forms on April 2, 2015, April 16, 2015, May 28, 2015 and December 10, 2015, in which she requested and was actually paid overtime after this alleged conversation is said to have occurred.[22]

Plaintiff also testified that she was advised by Defendant, through Tracy Smearman, that she was ineligible for overtime and, therefore, did not submit her overtime hours.[23] Defendant produced an email from Ms. Smearman, dated March 30, 2015, which stated that Plaintiff was an "exempt worker" and that Ms. Barber only agreed to pay Plaintiff "extra" if she worked extra days.[24] However, Plaintiff's overtime submissions show that she continued to submit and was paid for overtime hours after this March 30, 2015 email.[25] Indeed, she submitted requests for and

---

[19] Dupont Depo: Vol. II, p. 128-29, Def. Ex. 10.
[20] Dupont Depo.: Vol. II, p. 149, line 17 – p. 152, line 19.
[21] Dupont Depo.: Vol. II, p. 150, line 3 – p. 152, line 3.
[22] *See* Def. Ex. 3.
[23] Dupont Depo: Vol. I, p. 21, lines 3-16.
[24] Pl. Ex. 11.
[25] Def. Ex. 2 and 3

4

was paid overtime for the weeks ending April 2, 2015 and April 16, 2015, immediately following the emails she claims prevented her from turning in her overtime.[26]

Plaintiff's testimony shows that she knew she was supposed to report her overtime hours to Defendant:

> Q: How did you determine that you were going to fill out a form and submit it and when you were not?
> A: At one point closer to the end of my employment, I was told it was okay to start submitting overtime requests . . .
> Q: So from that time forward, did you submit overtime requests when you worked them?
> A: I did, when I was able to.
> Q: When you say "you were able to" what would have kept you from doing it?
> A: At one point, our payroll changed days and my schedule was Tuesday through Saturday.
> Q: Right.
> A: And the payroll – to the best of my recollection, we had to have everything turned in by the end of the day Monday. The payroll ran through Saturday though, so if I had a Saturday appointment after 1:00, that would have been part of the week's hours – within the hour – to so and to calculate payroll because he was going on vacation or something. I wasn't in the office then and didn't get the opportunity to turn in the stuff so I just didn't make a big stink because I didn't want to have bad times at work.
> Q: You were off Mondays, correct?
> A: Yes.
> Q: So if you didn't to it by Monday, you just wouldn't turn it in?
> A: Correct.[27]

Plaintiff alleges that she was unable to turn in her overtime hours because she sometimes had overtime hours after she left the office on Saturday.[28] Further, because she was off work on Mondays and did not return to the office until Tuesday, she missed the deadline to turn in her hours.[29] However, rather than turning in what overtime hours she had incurred by that point or making other arrangements, Plaintiff simply did not turn in any hours.[30] Plaintiff cannot establish

---

[26] Def. Ex. 3.
[27] Dupont Depo: Vol. I, p. 45, line 5, p.46, line 2, lines 14-16.
[28] Dupont Depo: Vol. I, p. 45, line17 – p. 46, line 10.
[29] *Id.*
[30] Dupont Depo, Vol. I, p.46, lines 14-16.

that Defendant prevented Plaintiff from turning in any of the hours she is now claiming she is entitled to be paid for. Plaintiff cannot, as a matter of law, maintain a claim for overtime when she never made Defendant aware she was actually working.

## II. LAW AND ARGUMENT

### A. SUMMARY JUDGMENT STANDARD.

Rule 56(c) of the Federal Rules of Civil Procedure governs motions for summary judgment and states summary judgment "is appropriate when viewing the evidence in the light most favorable to the non-movant, the Court determines that 'the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Nieddu v. Lifetime Fitness, Inc.* 38 F.Supp. 3d 849, 851 (S. D. Texas 2014). There is a genuine dispute of material fact "if the evidence would allow a reasonable jury to find in favor of the non-movant." *Id.* "[A]n FLSA Plaintiff must prove by a preponderance of the evidence that he or she performed work for which he or she was not properly compensated." *White v. Baptist Memorial Healthcare Corp.,* 699 F. 3d 869, 873 (6th Cir. 2012).

If an employer establishes a reasonable process by which an employee can report uncompensated work time under the FLSA, the employer is not liable for non-payment if that employee does not follow the established process. *White,* 699 F. 3d at 876. Further, when the employee fails to follow reasonable time reporting procedures she prevents that employer from knowing its own obligation to compensate her and "thwart[s] the employer's ability to comply with the FLSA." *Id.* When an employee fails to notify the employer or deliberately prevents the employer from acquiring knowledge of the overtime work, the employer's failure to pay for the overtime hours is not a violation of the FLSA. *Nieddu,* 38 F. Supp. 3d at 854.

6

In *Forrester v. Roth's I.G.A. Foodliner, Inc.,* 646 F. 2d 413, 415 (9th Cir. 1981), the Ninth Circuit affirmed the district court's grant of summary judgment to the employer in an FLSA case. Similar to the facts of this case, Plaintiff claimed he was due overtime in excess of the amount he had actually reported to his employer. *Id.* The Court found that there was no genuine issue of material fact as to whether anyone at the employer knew or should have known that Plaintiff had been uncompensated for overtime work he performed. *Id.* It found that Plaintiff "deliberately omitted the inclusion" of hours he was claiming to have worked from his time sheet, even though he knew he would have been paid for those hours. *Id.* at 414.

In *Newton v. City of Henderson,* 47 F.3d 746, 750 (5th Cir. 1995), the Fifth Circuit similarly held that Plaintiff failed to show that his employer violated the FLSA by paying him only for the hours that he reported on his timesheet. The Court found that the employer established specific procedures to be followed in order for a Plaintiff to receive payment for overtime, which Plaintiff ignored. *Id.* Further, the court did <u>not</u> find the employer had constructive knowledge that Plaintiff was working overtime simply because it had the ability to investigate whether the employer was truthfully completing payroll forms. *Id.* The Court found that if it were to adopt that finding then it would essentially hold that the employer did not have the right to require an employee to adhere to its procedures for claiming overtime. *Id.*

In the instant case, Plaintiff alleges she was not paid for hours she worked while employed by Defendant. Defendant established a process by which Plaintiff was to submit her hours for payment of overtime. Plaintiff admitted receiving the form and followed the process to submit her overtime hours. Plaintiff has acknowledged she was paid for all of the overtime hours she actually

7

submitted to Defendant. Moreover, Defendant's other kitchen and bath designers used the same process to report overtime hours and received payment for those hours.[31]

It is important to understand that Defendant adopted the policy of requiring individuals in Plaintiff's position to turn in their overtime because most of this overtime was for appointments outside the showroom.[32] Plaintiff's regular, showroom hours were 8:00 a.m. to 5:00 p.m. Tuesday through Friday, and 9:00 a.m. to 1:00 p.m. on Saturday.[33] The overtime Plaintiff is requesting for the first time in this lawsuit, which is outlined in Defendant's Exhibit 10, were for the most part related to appointments outside the office.[34]

The law is clear that if an employer establishes a reasonable process for employees to submit payment for overtime hours, the employer is not liable if an employee fails to follow that process. An employer cannot be held liable for the failure to pay an employee for hours it did not know the employee worked. The onus is on the employee to report the hours worked so that the employer can comply with the FLSA.

The Court in *Newton* recognized that an employee who failed to report hours could only prevail if the "employer knew or had reason to believe the reported information was inaccurate." *Newton*, 47 F.3d at 749 *quoting Brumbelow v. Quality Mills, Inc.*, 462 F.2d 1324, 1327 (5th Cir. 1972). In this case, because most of the unreported hours Plaintiff is now claiming were for appointments outside the office, Defendant would have had no way to know Plaintiff was working outside the office on any particular day. While Defendant knew Plaintiff, along with the other kitchen and bath designers, occasionally had off-site appointments outside of regular showroom hours, Defendant saw that Plaintiff was periodically turning in overtime requests just like the other

---

[31] Bryce Barber Aff: ¶4-7, Ex. A.
[32] DuPont Depo. Vol. II, p. 130, line 12-15.
[33] DuPont Depo. Vol. I, p. 68, line 11-15.
[34] DuPont Depo. Vol. II, p. 130, line 12-15.

kitchen and bath designers. None of them turned in overtime every week.[35] Defendant had no reason to suspect Plaintiff was turning in some hours, but not others.

While Plaintiff may argue that Defendant had access to the calendar and mileage reports Plaintiff used to recreate the hours she is claiming in this lawsuit, the fact that Defendant could have hypothetically figured this out by reviewing various records it had in its possession, is not the same as establishing Defendant <u>should</u> have known. The Court in *Newton* held as much under a remarkably similar factual pattern:

> The fact that [Defendant] had access to the Task Force's activities means that perhaps he could have known that Newton was working overtime hours, but the question here is whether he should have known. In light of the fact [Defendant] explicitly ordered Newton not to work overtime hours and in light of the fact that Newton admits that he never demanded payment for overtime already worked, it is clear that access to information regarding the Task Force's activities, standing alone, is insufficient to support the conclusion that the City should have known that Newton was working overtime.

*Newton*, 47 F.3d at 749. In this case, just as in *Newton*, Plaintiff had been told by Cindy Barber, Defendant's CEO, to not work overtime without prior approval.[36] Defendant had no legal obligation to undertake the type of investigation that would have been necessary to discover Plaintiff was failing to turn in all of her time.

Further, the Court in *White* noted that in situations where it is otherwise difficult for an employer to discover the employee's extra work, the employee's failure to report their overtime hours works to rebut the claim that the employer had constructive knowledge. *White*, 699 F.3d. Under similar factual circumstances, the Court held:

> when an employee works offsite...without telling his employer, and there is a complete lack of evidence that would suggest to his employer that he was doing this work (i.e. he reported overtime in the past, his normal duties do not require overtime, other coworkers do not work overtime, no one ever saw him working late, etc.), the employee's suggestion that his employer should have known he was

---

[35] Bryce Barber Aff. ¶ 5-7, Ex. A.
[36] DuPont Depo. Vol. II, p. 94, Def. Ex. 5.

> working falls flat. In such situations, asking the employee to tell the employer he is working makes sense.

*White*, 699 F.3d 881. In this case, the majority of hours Plaintiff is requesting for the first time in this lawsuit involve off-site appointments, therefore making it difficult for Defendant to discover, through reasonable diligence, whether these hours were being worked. Absent some evidence of actual knowledge, the burden to report overtime hours under these circumstances, as *White* suggests, should lie with the employee.

It is unclear why Plaintiff submitted some of her overtime hours to Defendant and failed to submit others. Her reasons varied and included alleged verbal representations from the employer and Plaintiff's purported inability to turn documentation in timely. While Defendant disputes Plaintiff's alleged reasons for not doing so, this Court does not need to resolve those factual disputes for purposes of this Motion. Rather, Defendant's contention is that, as a matter of law, it cannot be liable to Plaintiff under the FLSA for the payment of overtime hours that Plaintiff could have and should have reported at the time, but did not.

After each of the events, which Plaintiff is now claiming discouraged her from turning in overtime hours, she actually did turn in and was paid for numerous overtime hours. Her own actions of subsequently turning in those overtime hours establishes, as a matter of law, that her failure to turn in other hours was not reasonable. Plaintiff clearly knew and understood the process by which to report overtime hours, she simply failed to follow that process. There is no evidence to suggest that Defendant knew Plaintiff was working those hours and not reporting her time.

Plaintiff cannot, as a matter of law, turn in some overtime hours, but not others, and, later, make a claim for the overtime hours she failed to turn in. This principle was recognized by the Sixth Circuit in *White v. Baptist* when it held

> Baptist established a system to compensate workers for time worked during meal breaks. When White utilized the system she was compensated, and when she failed to use the system she was not compensated. Without evidence that Baptist prevented White from utilizing the system to report either entirely or partially missed meal breaks, White cannot recover damages from Baptist under the FLSA.

*White*, 699 F.3d at 877. Plaintiff cannot establish that either the alleged statements of Cindy and Bryce Barber after she received her Compensation Plan or her email exchange with Tracy Smearman somehow prevented her from turning in hours, since after both of those alleged exchanges she reported and was paid for her overtime hours. Thus, there are no issues of material fact that remain to be litigated and Defendant is entitled to judgment as a matter of law.

WHEREFORE, Defendant Active Plumbing Co. asks this Court to grant its Motion for Summary Judgment and enter judgment for Defendant and against Plaintiff on all of Plaintiff's claims.

Respectfully submitted,

*/s/ Jo A. Tatarko*
Jo A. Tatarko (#0082062)
Richard N. Selby, II (#0059996)
DWORKEN & BERNSTEIN CO., L.P.A.
60 South Park Place
Painesville, Ohio 44077
(440) 352-3391 (440) 352-3469
jtatarko@dworkenlaw.com
rselby@dworkenlaw.com

Attorneys for Defendants

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing was filed via the court's electronic filing system and will be served via same to all counsel of record this 14th day of August, 2017.

/s/ Jo A. Tatarko
Jo A. Tatarko (#0082062)
*Attorney for Defendants*